UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
1:21-cv-00203-RJC

| | |
|---|---|
| JEREMIAH J. WARD, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | **ORDER** |
| COMMISSIONER OF SOCIAL SECURITY, ) | |
| ) | |
| Defendant. ) | |
| ) | |
| ) | |

**THIS MATTER** comes before the Court on the Parties' Cross Motions for Summary Judgment. (DEs 10, 13). Having fully considered the written arguments, administrative record, and applicable authority, the Court finds that Defendant's decision to deny Plaintiff Social Security benefits is supported by substantial evidence and affirms the decision. Accordingly, the Court grants Defendant's Motion for Summary Judgment.

## I. BACKGROUND

Plaintiff Jeremiah Ward ("Mr. Ward") seeks judicial review of the Commissioner of Social Security's ("Defendant" or "Commissioner") denial of his social security claim. Mr. Ward filed his application for disability insurance benefits on May 23, 2019, with an alleged onset date of October 28, 2016. (Tr.[1] 10).

In denying Mr. Ward's social security claim, the ALJ conducted a five-step sequential evaluation. (Tr. 10–20). At step one, the ALJ found that Mr. Ward had not engaged in substantial gainful activity since the application date. (*Id.* at 12). At step two, the ALJ found that Mr. Ward

---

[1] Citations to "Tr." throughout the order refer to the administrative record at DE 7.

had the following combination of severe impairments: bipolar disorder, PTSD, schizophrenia, and substance dependence. (*Id.*). At step three, the ALJ found that none of the impairments, or combinations of impairments, met or equaled the severity of a listed impairment. (*Id.* at 13–14). Before moving to step four, the ALJ found that Mr. Ward had the residual functional capacity ("RFC") to perform a full range of work as explained below:

> [T]he claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following non-exertional limitations: the claimant can perform and maintain concentration for simple tasks; adapt to routine change; and have no more than occasional public interaction.

(*Id.* at 14). At step four, the ALJ found that Mr. Ward had no past relevant work but found at step five that Mr. Ward could perform jobs that existed in significant numbers in the national economy. (*Id.* at 19–20).

After exhausting his administrative remedies, Mr. Ward brought the instant action for review of Defendant's decision denying his application for disability insurance benefits. (DE 1).

## II. STANDARD OF REVIEW

The Social Security Act, 42 U.S.C. § 405(g) and § 1383(c)(3), limits this Court's review of a final decision of the Commissioner to: (1) whether substantial evidence supports the Commissioner's decision, *Richardson v. Perales*, 402 U.S. 389, 390, 401 (1971); and (2) whether the Commissioner applied the correct legal standards. *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990); *see also Hunter v. Sullivan*, 993 F.2d 31, 34 (4th Cir. 1992) (*per curiam*). The District Court does not review a final decision of the Commissioner *de novo*. *Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986); *King v. Califano*, 599 F.2d 597, 599 (4th Cir. 1979); *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972).

As the Social Security Act provides, "[t]he findings of the [Commissioner] as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). In *Smith v.*

2

Case 1:21-cv-00203-RJC   Document 15   Filed 08/31/22   Page 2 of 10

*Heckler*, 782 F.2d 1176, 1179 (4th Cir. 1986) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)), the Fourth Circuit defined "substantial evidence" as:

> Substantial evidence has been defined as being "more than a scintilla and do[ing] more than creat[ing] a suspicion of the existence of a fact to be established. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."

*See also Seacrist v. Weinberger*, 538 F.2d 1054, 1056–57 (4th Cir. 1976) ("We note that it is the responsibility of the [Commissioner] and not the courts to reconcile inconsistencies in the medical evidence.").

The Fourth Circuit has long emphasized that it is not for a reviewing court to weigh the evidence again, nor to substitute its judgment for that of the Commissioner, assuming the Commissioner's final decision is supported by substantial evidence. *Hays v. Sullivan*, 907 F.2d at 1456; *see also Smith v. Schweiker*, 795 F.2d at 345; *and Blalock v. Richardson*, 483 F.2d at 775. Indeed, this is true even if the reviewing court disagrees with the outcome—so long as there is "substantial evidence" in the record to support the final decision below. *Lester v. Schweiker*, 683 F.2d 838, 841 (4th Cir. 1982).

### III. DISCUSSION OF CLAIM

Plaintiff raises three general challenges: (1) the ALJ erred in evaluating Plaintiff's schizophrenia in light of listing 12.03(c), (2) the ALJ misevaluated the opinion of Dr. Pardoll, and (3) the ALJ failed to properly account for Plaintiff's moderate limitation in concentration, persistence, and pace.

#### A. Schizophrenia

Plaintiff argues that the ALJ erred by failing consider whether Plaintiff's schizophrenia meet or medically equals Listing 12.03(c).

"The Social Security Administration has promulgated regulations containing listings of

Case 1:21-cv-00203-RJC   Document 15   Filed 08/31/22   Page 3 of 10

physical and mental impairments which, if met, are conclusive on the issue of disability." *Radford v. Colvin*, 734 F.3d 288, 91 (4th Cir. 2013) (quotation marks omitted). At step three, the ALJ must determine whether the claimant has an impairment that meets or medically equals all the requirements of a listed impairment. *Id.* at 290–91. "Disability is conclusively established if a claimant's impairments meet all the criteria of a listing or are medically equivalent to a listing." *Gore v. Berryhill*, No. 7:15-cv-00231, 2017 U.S. Dist. LEXIS 34557, at *17 (E.D.N.C. Feb. 23, 2017), *adopted by* 2017 U.S. Dist. LEXIS 34283 (E.D.N.C. Mar. 10, 2017). "[T]he ALJ must provide a coherent basis for his step three determination." *Odoms v. Colvin*, 194 F. Supp. 3d 415, 421 (W.D.N.C. 2016). "However, if the ALJ's opinion read as a whole provides substantial evidence to support the ALJ's decision at step three, such evidence may provide a basis for upholding the ALJ's determination." *McDaniel v. Colvin*, No. 2:14-cv-28157, 2016 U.S. Dist. LEXIS 43086, at *12–13 (S.D. W. Va. Mar. 31, 2016). Indeed, "even a cursory explanation at step three may prove satisfactory so long as the decision as a whole demonstrates that the ALJ considered the relevant evidence of record and there is substantial evidence to support the conclusion." *Odoms*, 194 F. Supp. 3d at 421 (quotation marks and brackets omitted).

To meet the criteria of Listing 12.03(c), a claimant must show medically documented evidence over at least two years of both (1) "[m]edical treatment, mental health therapy, psychosocial support(s), or a highly structured setting(s) that is ongoing and that diminishes the symptoms and signs of your mental disorder" and (2) "[m]arginal adjustment, that is, you have minimal capacity to adapt to changes in your environment or to demands that are not already part of your daily life." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.03(c). Here, the ALJ specifically considered Listing 12.03(c) at step three and found that the record evidence does not meet this listing. (Tr. 14). The ALJ explained his finding at step three when he found no marked limitations

for mental impairments and in the RFC.

At step three, in finding a moderate limitation in understanding, remembering, or applying information, the ALJ explained that while Plaintiff had a limited, eighth-grade education, Plaintiff had an EBT card and knew how to use it, was interested in obtaining a job, and was pursuing job opportunities. (Tr. 13). In finding a moderate limitation in interacting with others, the ALJ explained that while Plaintiff describes some paranoid ideation and states that he does not trust people, Plaintiff lived with a girlfriend and with a friend who drove him to appointments. (*Id.*). In finding a moderate limitation in concentrating, persisting, or maintaining pace, the ALJ found that while Plaintiff reported some difficulty with concentrating and was easily distracted, Plaintiff actively participated in recovery meetings, counseling services, and medication management, and was able to access services for his EBT card. (*Id.*). In finding a moderate limitation in adapting or managing oneself, the ALJ found that Plaintiff reported no difficulties in performing personal care and indicated he could prepare simple meals. (*Id.*).

Turning to the RFC analysis, the ALJ explained that "[a]lthough the claimant alleged disability beginning in 2016, there are no records until he established care in 2018. However, he then received no further treatment until 2020." (Tr. 18). The ALJ also explained Plaintiff had not received any inpatient hospitalization for mental health conditions and the record shows only "sporadic and intermittent treatment . . . with no consistent adherence to any care or medication regimen." (Id.). The ALJ further noted that Plaintiff testified that his continued drug use worsened his mental health conditions but that when sober Plaintiff felt steady enough to return to work. The ALJ thus not only addressed Listing 12.03(c) but also provided a coherent basis for his conclusion that Plaintiff's schizophrenia did not meet or medically equal Listing 12.03(c). Specifically, that there is insufficient medical evidence over a two-year period of Plaintiff's mental

disorder and that Plaintiff's ability to live with others, including a girlfriend and friend, use an EBT card, prepare meals, and attend treatment, in combination with Plaintiff's self-admitted testimony that when he is sober he feels steady enough to work, shows that he has more than a minimal capacity to adapt to changes in his daily life. Therefore, the ALJ did not commit reversible error in finding that Plaintiff's schizophrenia did not meet or medically equal Listing 12.03(c).

### B. Opinion of Dr. Pardoll[2]

Plaintiff argues the ALJ erred in evaluating the medical opinion of Dr. Pardoll. For claims filed after March 27, 2017, the regulations provide that the ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources." 20 C.F.R. § 404.1520c(a). Thus, the treating physician rule is no longer applicable for claims filed after March 27, 2017. *Gleason v. Kijakazi*, No. 1:20-CV-00350-GCM, 2021 WL 5182102, at *2 (W.D.N.C. Nov. 8, 2021). Instead, when determining the persuasiveness of medical opinions and prior administrative medical findings the ALJ considers five factors: (1) supportability; (2) consistency; (3) relationship the medical source has with the claimant, including the (i) length, (ii) frequency, (iii) purpose of the treatment relationship, (iv) extent of the treatment relationship, and (v) examining relationship; (4) specialization; and (5) other factors. *Id.* § 404.1520(a), (c). The most important of these factors are supportability and consistency:

> (1) Supportability. The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her

---

[2] Plaintiff does not argue that the ALJ misevaluated the opinion of Dr. McSurdy. Plaintiff only mentions Dr. McSurdy one time and mentions in passing that Dr. McSurdy found that Plaintiff "has at times seemed disorganized during meetings." (Tr. 17, 295). However, Dr. McSurdy admitted that "we have not been seeing him long enough to make further diagnoses." (*Id.*). Accordingly, because Plaintiff did not raise the ALJ's evaluation of Dr. McSurdy as an error, and given that Dr. McSurdy did not provide an opinion and admitted that she could not diagnose Plaintiff in such a short time, there is nothing for the Court to review.

medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be.

(2) Consistency. The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be.

*Id.* §§ 404.1520(b)(2), (c)(1)-(2). The ALJ's decision should explain how he considered both of these factors. *Id.* § 404.1520(b)(2).

Here, Dr. Pardoll performed a consultative psychological examination on Plaintiff in October 2019. During the exam, Plaintiff reported never having been hospitalized for mental health reasons; that he attempted suicide by overdose; that he had auditory hallucinations; that people made him nervous; that he lived with a girlfriend; that he was currently using heroin and methamphetamines; and that his hallucinations worsened with drug use. (Tr. 16). Dr. Pardoll noted that Plaintiff's "mood seemed dysphoric and affect appeared flat;" "he seemed coherent;" "he presented with paranoid ideation and reported auditory hallucinations;" "he was oriented to all spheres;" he showed good immediate and long-term memory tasks; and his intellectual functioning was in the low-average range. (*Id.*). Based on this, Dr. Pardoll opined that Plaintiff had mental health symptoms that interfered with social and occupational functioning; that he was unable to retain information and had an inadequate attention span; that his ability to perform simple repetitive tasks was significantly impacted; that he does not relate well to others; and that he could not tolerate stressors in daily work activity. (*Id.*). The ALJ found Dr. Pardoll's opinion unpersuasive, noting that it is unsupported by medically acceptable clinical findings; that it is inconsistent with record evidence including living with a girlfriend, conservative and intermittent treatment, and Plaintiff's own testimony that he can work when sober; and that Plaintiff was not forthcoming with Dr. Pardoll about his going substance abuse. (Tr. 19).

7

The ALJ properly discussed and evaluated Dr. Pardoll's opinion and sufficiently explained why he found it unpersuasive. (*Id.*). In evaluating Dr. Pardoll's opinion, the ALJ considered the supportability and consistency factors by noting that Dr. Pardoll's opinion is neither supported by medical evidence nor consistent with conservative and intermittent treatment. (*Id.*). The ALJ also noted that Dr. Pardoll's opinion was based on Plaintiff's subjective reports, that Plaintiff was not forthcoming about his ongoing substance abuse, and that Dr. Pardoll's severe restrictions were inconsistent with Plaintiff's own testimony at the hearing. (*Id.*). The ALJ thus "buil[t] an accurate and logical bridge from the evidence to his conclusion," *Monroe v. Colvin*, 826 F.3d 176, 189 (4th Cir. 2016), and supported his conclusion with more than a scintilla of evidence such that a reasonable mind could be satisfied. *Smith v. Heckler*, 782 F.2d 1176, 1179 (4th Cir. 1986). Accordingly, as the ALJ supported his decision by substantial evidence "it is not within the province of [this] court" to reweigh the evidence. *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990).

### C. Moderate Limitation in CPP

Plaintiff argues the ALJ violated *Mascio* by failing to explain how the RFC limitations account for Plaintiff's moderate limitation in concentration, persistence, and pace ("CPP"). *Mascio v. Colvin*, 780 F.3d 632, 638 (4th Cir. 2015).

In *Mascio*, the Fourth Circuit held that an ALJ must explain how a moderate CPP limitation does or does not translate into an RFC limitation. *Id.* The Fourth Circuit also held that an ALJ cannot account for a moderate CPP limitation by simply limiting a claimant to "simple, routine tasks or unskilled work" without further explanation. *Id.* However, there is no "per se" rule regarding what specific limitations must be included in an RFC to account for CPP limitations. *Shinaberry v. Saul*, 952 F.3d 113, 121 (4th Cir. 2020). And, while "an ALJ cannot summarily

8

account for a claimant's limitations in concentration, persistence, and pace by restricting the hypothetical question to simple, routine tasks or unskilled work," where the ALJ provides sufficient explanation in support of the RFC finding, the decision should be affirmed. *Id.* (quotations omitted).

Here, at step three, the ALJ found Plaintiff had a moderate CPP limitation because he had "some difficulty concentrating and maintaining attention" but was able to participate in recovery meetings, access his EBT card, and pursue employment leads. (Tr. 16). In the RFC discussion, the ALJ limited Plaintiff to "perform[ing] and maintain[ing] concentration for simple tasks; adapt[ing] to routine change; and hav[ing] no more than occasional public interaction." (Tr. 14). The ALJ explained that he found the State agency consultants opinions on Plaintiff's CPP limitation persuasive because Plaintiff "has not received the type of intensive treatment one would expect for such severe allegations. His ongoing substance use also exacerbates his symptoms, as notes when his is sober suggest significant improvement in symptoms. The evidence as a whole shows no more that [sic] moderate impairment from a mental standpoint." (Tr. 19). The ALJ also explained why Plaintiff's allegations of severe mental health impairments were unpersuasive.

> There appears to be a longstanding history of illicit substance use, legal issues resulting in incarceration and lack of any significant treatment for alleged severe mental health conditions. The claimant indicated he has heard auditory hallucinations since he was a teenager, and experienced symptoms from prior trauma, as well as ADHD while in school, depression and anxiety. He indicated he felt he might have been self-medicating with illegal substances. By his own report, the claimant stated he has not received any inpatient hospitalization care for mental health conditions. The record shows only sporadic and intermittent treatment for any of these issues, with no consistent adherence to any care or medication regimen . . . Unfortunately, there appeared to be ongoing use of multiple substances throughout, including methamphetamines . . . In the period where claimant indicated he was sober in 2020 and compliant with taking his prescribed Seroquel, he reported decrease in the voices, anxiety and depression, indicated he was sleeping better, and his mood was more stable. He even indicated he felt he was steady enough to return to work, and was actively

9

> searching job leads given to him. The claimant testified he had problems being around others, but it appears during the period at issue he had a girlfriend and now lives with a friend, who appear to be his main social supports. He reported trouble concentrating, finishing tasks and following directions, but he appears able to interact with providers, obtain his Suboxone regularly, understand the cost of his medications (paid for by his family), use EBT card given to him, and perform activities of daily living independently. The claimant's mental health impairments are likely to cause some limitations, but these would not preclude him from performing all work-related activities. The claimant's allegations of such severe mental conditions and limitations are not supported by the providers' records, conservative lack of treatment, and benign findings throughout.

(Tr. 18). Accordingly, this case is inapposite with *Mascio*. Unlike the ALJ in *Mascio*, who failed to explain the CPP limitation, here the ALJ thoroughly explained the moderate CPP limitation. As the ALJ built "an accurate and logical bridge from the evidence to his conclusion," meaningful review is not frustrated, and remand on this issue is unwarranted. *Monroe v. Colvin*, 826 F.3d 176, 189 (4th Cir. 2016); *Thomas v. Berryhill*, 916 F.3d 307, 311 (4th Cir. 2019).

### IV. CONCLUSION

**IT IS, THEREFORE, ORDERED** that:

1. Plaintiff's Motion for Summary Judgment, (DE 10), is **DENIED**;

2. Defendant's Motion for Summary Judgment, (DE 13), is **GRANTED**; and

3. Defendant's decision to deny Plaintiff Social Security benefits is **AFFIRMED**.

The Clerk is directed to close this case.

**SO ORDERED.**

Signed: August 31, 2022

Robert J. Conrad, Jr.
United States District Judge